**MIDWESTERN DEVELOPMENT CO., Inc., Appellant,**

v.

**F. B. DUNLAP, Jr., et al., Appellees.**

No. 7638.

Court of Civil Appeals of Texas.

Texarkana.

March 23, 1965.

Rehearing Denied April 13, 1965.

William C. Odeneal, Jr., Dallas, for appellant.

Spencer C. Relyea III, Dallas, for appellees.

FANNING, Justice.

A summary judgment case. On Dec. 17, 1962, appellant Midwestern Development Co., Inc., purchased two tracts of land located in Dallas County from appellees. As part consideration for the purchase Midwestern executed a $50,000.00 note to appellees to be paid in the following manner: $20,000.00 at anytime in 1963, and the remaining $30,000.00 on or before 3 years from the date of the note (Mar. 17, 1963). Said note was executed by Gordon O. Dodson as President of Midwestern and also individually. Dodson died in 1963.

This suit was brought by Midwestern and the executrix and executor of Dodson's estate against defendants-appellees to set aside a foreclosure of the property in question under a deed of trust executed by Midwestern to E. F. Kucera, Trustee. The trustee's sale occurred on Mar. 3, 1964.

Defendants filed a motion for summary judgment with supporting affidavits. Plaintiff filed no answer to the motion for summary judgment, no counter affidavits, no depositions, no character of evidentiary matter, and did not seek to avail themselves of the provisions of subd. (f) of Rule 166–A, Texas Rules of Civil Procedure, and did not seek such delay as might be necessary to controvert the facts stated in the supporting affidavits to defendants' motion for summary judgment.

The trial court granted the motion for summary judgment and rendered a take nothing judgment against the plaintiffs. Plaintiff Midwestern has appealed.

■ Summary judgment proceedings do not seek to decide issues of fact, but to ascertain if any genuine issues of material fact exist. Rolfe v. Swearingen, Tex.Civ. App., 241 S.W.2d 236, wr. ref., n. r. e.

(1951); Lotspeich, et vir v. Chance Vought Aircraft, et al, Tex.Civ.App., 369 S.W.2d 705, wr. ref., n. r. e. (1963).

In Lotspeich v. Chance Vought, supra, 369 S.W.2d 705, it was stated in part as follows:

"Furthermore, we think it can now properly be said to be the law in Texas that the uncorroborated affidavit or deposition of an interested party or witness will support a summary judgment in the absence of a controverting affidavit or of an attempt by the party against whom the motion is urged to avail himself of the right under subdivision (f) of Rule 166–A, Vernon's Texas R.C.P., and seek such delay as may be necessary to secure affidavits or take depositions to controvert the facts stated by the interested party or witness in his affidavit. Bottomed upon the holding to that effect in Fowler v. Texas Employers Insurance Ass'n., Tex.Civ.App., 237 S.W.2d 373, err. ref.; Rolfe v. Swearingen, Tex.Civ. App., 241 S.W.2d 236, err. ref. n. r. e.; and Gifford v. Travelers Protective Ass'n., 9 Cir., 153 F.2d 209, 211, the Court of Civil Appeals at Waco in Holland v. Lansdowne-Moody Co., Tex.Civ.App., 269 S.W.2d 478, 481, no wr. hist., said:

"'It is the law that where a plaintiff, at a hearing on defendant's motion for summary judgment under Rule 166–A, files no counter affidavits, and makes no showing other than as stated in their pleadings, and makes no showing that affidavits are unavailable, he in effect admits the facts alleged in defendant's sworn affidavits supporting the motion, and for which reason cannot complain of the court's granting the motion for summary judgment.'"

We have carefully examined the supporting affidavits which constitute the only evidentiary matter that was before the trial court on the motion for summary judgment. From the evidentiary matter before the trial court it is clear that there were no defects in the notices of the trustee's sale and that such sale was in conformity with law and no irregularity appears which would warrant the setting aside of the foreclosure sale. It clearly appears that plaintiffs were in default on the payment of the deed of trust note and that neither payment nor "arrangements to pay" were ever made prior to the trustee's sale.

Appellant contends that there was a disputed issue of fact as to whether appellant made "arrangements" to pay. We think it is clear from defendant French's affidavit that appellant did not make any arrangements to pay the sums in question before the first Tuesday in Feb. 1964, and that a fair construction of French's affidavit compels the conclusion that appellant was required to make a part payment of its indebtedness to appellees before the first Tuesday in February, 1964, and not merely to make arrangements to pay.

The evidence, as set forth in French's affidavit, is that in December, 1963, Nolen, acting as agent for Midwestern, asked French to waive the requirement contained in said note that a payment of $20,000.00 be made on or before Dec. 31, 1963. French unequivocally refused to do this. Early in Jan. 1964, Nolen and McCord, acting as agents for Midwestern, offered to make the past due payment of $20,000.00 if appellees would release 3½ acres on the corner of the tract so that Midwestern could sell it or borrow on it. French refused to consider such release unless given additional security. When Nolen and McCord suggested that Midwestern could give a lien on a farm near Texarkana, French submitted the proposition that if Midwestern would pay $12,-500.00 on Jan. 15, 1964, and $12,500.00 on Feb. 15, 1964, and pay the balance on the note on or before Dec. 31, 1965, appellees would release the corner tract, provided

Midwestern would also give appellees a mortgage on a farm near Texarkana (that mortgage to be released at any time upon the additional payment of $12,500.00). French stated that in response to this counter offer "Mr. Nolen and Mr. McCord then said that they would let me know what they would do." This did not constitute any acceptance of French's counter offer.

■ That French's counter offer was never accepted is apparent from the fact that Nolen and McCord later returned to seek a further postponement of the time for payment. It was on this occasion that French told them that "They had to make their arrangements to pay these sums before the first Tuesday in February." Notices of trustee's sale of the property to be held the first Tuesday in Feb. 1964, were posted but because the notices were defective, proper notices were posted for the trustee's sale to be held the first Tuesday in March, (Mar. 3) 1964. French further stated in his affidavit to the effect that he did not hear anything more from Nolan or McCord until Mar. 5, 1964, when they came to his office and stated that they would pay $25,000.00 plus interest but that Midwestern would need a release of the 3½ acre corner tract but that they said nothing about giving additional collateral. French further stated in his affidavit: "I then told them that the trustee had foreclosed the deed of trust on Mar. 3, 1964, and that we had repurchased the property. At no time has Midwestern Development Co., Inc. ever tendered payment of the note set forth in Plaintiff's Original Petition."

■ From the uncontroverted record in this cause it is our view that there is no evidence of conduct on the part of appellees which would raise an estoppel of any character, and there being a default in payment under the note, the foreclosure under the deed of trust was proper. In this connection see Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832, writ refused (1953).

With respect to appellant's contention that there was a question of fact concerning the existence of a conspiracy between appellees to lull appellant into a feeling of security in order to take advantage of a profitable sale, we refer to Sparkman v. McWhirter, supra, 263 S.W.2d 832 wherein it was stated in part as follows:

" 'If controversy in the pleading were alone enough to prevent summary judgment, this practice would ordinarily be useless, for there is no effective constraint upon what may be asserted or denied in the pleadings and there are many generalities which are good pleading but, to the full extent of their application in a particular case, bad truth. * * *'

"Hon. Roy McDonald, member of Texas and New York Bars, author of McDonald, Texas Civil Practice, in 30 T.L.R., p. 297, reasons to the same effect: 'But where a motion is supported by affidavits, depositions, admissions, or other extrinsic evidence, sufficient upon its face to establish facts which, if proven at the trial, would entitle the movant to an instructed verdict, the opponent must specify opposing evidence which will raise an issue as to some material fact, or must justify his failure to do so in accordance with the provisions discussed in part 3 below.' ".

■ Appellees' supporting affidavits clearly demonstrate that the trustee's sale was in all respects proper and no irregularities were present; that plaintiffs were in default in payment of the note, did not make the required payments and that no timely "arrangements" were made to pay the note, and that under the uncontroverted facts appellees showed that they had a legal right to foreclose the deed of trust lien by making the trustee's sale that was made. Furthermore there were no equitable grounds present under the uncontroverted facts which would estop appellees from exercising their legal right of foreclosure.

Since appellees had the legal and equitable right to foreclose under the uncontroverted facts, appellant's bare conspiracy pleadings, unsupported by any facts, would not raise an issue of material fact under the uncontroverted record in this cause. Sparkman v. McWhirter, supra.

The judgment of the trial court is affirmed.